# UNITED STATES DISTRICT COURT

# PENNSYLVANIA MIDDLE DISTRICT

**FILED**
**HARRISBURG, PA**

FEB 2 2 2012

MARY E. D'ANDREA, CLERK
Per _____
**Deputy Clerk**

STEPHEN G. CONKLIN
100 SPANGLERS ROAD LEWISBERRY, PA 17339
717-460-5460

Plaintiff

vs.

CASE # 3:12-CV-336

EMC MORTGAGE CO.
909 Hidden Ridge Drive,
Suite 200
Irving, Texas 75038
SUNSET MORTGAGE CO.
SAXON MORTGAGE Inc.,
4880 Cox Road,
1st Glenn Allen, Virginia 23060
DEBORAH BLACK,
JEANNETTE COX
GRENAN & BIRSIC, P.C.
One Gareway Center
Ninth Floor
Pittsburgh, Pa/ 15222
MARY GRENAN, ESQUIRE
CHRISTINE ANTHOU, ESQUIRE

Emergency Petition To Stay
Eviction Based upon Void Judgment
and Declaratory and Injunctive Relief
Pursuant to Federal Rules of Court
60(b) (2), (3), (4) and (6).

---

## **EMERGENCY PETITION FOR RELIEF FROM VOID JUDGMENT**

## **PURSUANT TO FEDERAL RULES OF COURT 60(B)(2)(3)(4)(6)**

NOW COMES, Plaintiff Stephen G. Conklin and files this "Relief from Judgment pursuant to Federal Rules of Civil Procedure 60(b) (1) (2) (3) (4) and (6) and/or 60 (d) (1) and (3) ask this Court to grant an Emergency Petition to stay eviction based upon a Void Judgment" that was improvidently issued upon Plaintiff on/or about December 31, 2007 in the York County Courts, resulting in an unlawful sale of Plaintiff's property as subsequently occurred on February 23, 2009. Currently, Plaintiff and his family are subject to an unlawful ejectment from their home on February 22, 2012, at 9:30 am, which gives rise the exigency circumstances that brings Plaintiff afore this Court. Immediate action is required, lest imminent and irreparable harm and injury incur. In consideration of this, Plaintiff now states as follows:

### I.    **INTRODUCTORY STATEMENT**

Plaintiff brings this action in light of serious fraud that has been both perpetrated and thereafter concealed from Plaintiff, of which, Defendants have used the instrumentality of the Courts in furtherance of their scheme to deprive Plaintiff his rightful enjoyment of his property. Plaintiff invokes this Court's equitable powers and further, invokes Fed.R.Civ. P 60, et. seq. as his

immediate and lawful remedy to redress his grievances, borne of the fraudulent conduct and to Void Judgment as obtained thereby.

The Definition of "Void Judgment" is as follows, "A void judgment is no judgment. By it no rights are divested; from it no rights can be obtained. Being worthless in itself, all proceedings founded upon it are equally worthless. It neither binds nor bars any one.

All acts preformed under it and all claims flowing out of it are void. As to the person against whom a void judgment professes to be rendered, it binds him in no degree whatever, it has no effect as a lien upon his property, and it does not raise an estoppel against him. As to the person in whose favor it professes to be, it places him in no better position than he occupied before; it gives him no new rights, but an attempt to enforce it will place him AND/OR her in peril.

As to third persons, it can neither be a source of title nor an impediment in the way of enforcing their claims. A VOID JUDGMENT may be attacked at anytime and anywhere, because it is absolutely void. Even where the issue is not raised by Plaintiff in trial[1] court and is raised for the first time in an apppellate court, if the judgment shows on its face that it is void, it may be

---

[1] In the present case at hand the ironic part is that Plaintiff Conklin has never had a Trial by Jury or even a hearing on any matters at all.

attacked. (did the judge have subject matter jurisdiction or personam

jurisdiction.

## II.        <u>JURISDICTION</u>

### <u>JURISDICTION AND VENUE</u>

1. This action arises under the United States Constitution, particularly, for

   violations of Plaintiff's rights under the First, Fifth, Seventh and

   Fourteenth Amendments; and, under Federal Law, as enumerated under

   28 U.S.C. §§ 2201, 2202; and, 42 U.S.C. §§ 1983

2. Jurisdiction is invoked under the United States Code as follows:

3. 28 U.S.C. §1331 in that the matter in controversy exceeds the sum of

   $10,000, exclusive of interest and cost, and arises under the

   Constitution and laws of the United States.

4. This Court has original jurisdiction over Plaintiff's claims by operation

   of 28 U.S.C. §§ 1331 and 1343, and, supplemental jurisdiction over

   Plaintiff's state claims, pursuant to 28 U.S.C. § 1367.

5. This Court should at least grant Plaintiff a new Trial pursuant to F.R.C.

   59, as Plaintiff has never had a trial, or even a full, fair and impartial

   hearing, in front of a fair and impartial tribunal, so a next trial or

   hearing, would constitute Plaintiff's first trial or hearing.

6. This Court is vested with authority to issue the requested Declaratory

Relief, pursuant to 28 U.S.C. § 2201 and, as further defined under Rule 57, of the Federal Rules of Civil Procedure.

7. This Complaint is brought under Federal Rules of Civil Procedure 60 (b) to vacate this void judgment or in the alternative to grant a new trial under Federal Rule 59.

8. This Court has the authority to award the requested Injunctive Relief, under Rule 65, of the Federal Rules of Civil Procedure, and pursuant to 28 U.S.C. §§ 2202 and 1343(a)(3).

9. This Court has authority to award Plaintiff damages under 28 U.S.C. § 1343(a)(1)(2)(3)(4).

10. This Court has authority to award attorney fees, as to be incurred by Plaintiff under 42 U.S.C. § 1988.

11. Plaintiff avers venue is proper under 28 U.S.C. § 1391 as the claims set forth in this complaint arose here, and because of information and belief of Plaintiff, most if not all of the Defendants are located in and/or maintain a registered office within this venue.

12. In the alternative, Plaintiff avers that in the absence of the above, this Court retains venue over the claims set forth herein, under 28 U.S.C. § 1332 governing diversity of the parties.

### III.   **PARTIES**

13. Plaintiff is Stephen G. Conklin, a least sophisticated and susceptible

relevant hereto, is either employed, partnered, or otherwise firmly associated with Defendant G & B, operating primarily if not exclusively from their offices, located at, One Gateway Center, Ninth Floor, Pittsburgh, PA 15222. Defednant Grenen is being held in her private and as well as her corporate capacity.

19. Kristine M. Anthou, Esquire, is an attorney, who at all material times relevant hereto, is believed to be employed and/or otherwise associated with Defendants G & B, operating primarily if not exclusively from One Gateway Center, Ninth Floor, Pittsburgh, PA 15222. Defendant Anthou is being held in her private and as well as her corporate capacity.

20. Plaintiff reserves the right to add additional Defendants when they become known and also reserves the right to file his Amended Complaint based upon Discovery and/or dispositions.

## III.   FACTS

## COUNT 1 - FRADULENT MISREPRESENTATION

21. Plaintiff consulted numerous times with Sunset Mortgage Company on/or about April 1 to May 1, 1997 concerning the possibility of obtaining a loan to purchase a farm located at the following address, 100 Spangler Road, Lewisberry, Pa. 17339.

22. On April 1, 1997 Plaintiff completed an application to obtain a loan[2] of money with Deborah Black, the Manager of Sunset Mortgage Company XXXX Street, York Pa. 17402.

23. On April 17 and on April 21, 1997, Deborah Black, Manager of Sunset Mortgage Company represented to Plaintiff that they could arrange financing, via a loan secured through Saxon Mortgage, Inc.

24. Deborah Black, as Manager and in her corporate capacity as well as her individual capacity knew, and should have known that her representations to Plaintiff were false misrepresentations; statements concerning several key material facts, that were actually based upon a fraudulent intent.

25. Defendant Black by and through Defendant Saxon, hoped Plaintiff would justifiably rely upon them with the intent to cause great harm to Plaintiff through these fraudulent mispresentations for their unjust enrichment.

26. On April 21, 1997, Deborah Black, Manager of Sunset Mortgage Company, in a respondeat superior relationship with defendant Saxon Mortgage Company, Inc. represented to Plaintiff that they have arranged financing in the form of a loan, through Saxon Mortgage, Inc.

27. Deborah Black, Manager and in her corporate capacity as well as her

---

[2] Definition of loan of money from Steve's research.
Defendant's Uniform Commercial Code Complaint

individual capacity knew, and should have known that her

............. to Plaintiff was a deliberate nondisclosure of

material facts to the transaction at hand and is the same as culpable

misrepresentation for defendant Black under orders and direction of

Defendant Saxon Mortgage Company, Inc.

28. Defendant Saxon conspired with Defendant Sunset, and namely,

Defendant Black, to withhold pertinent material facts from Plaintiff

that neither Saxon or Sunset had any intention of ever lending any of

their own money by crediting any asset account and debiting any Net

Worth Account as required if either defendant was going to use their

own money in the lending process.

29. Defendant Black, Manager and in her corporate capacity as well as her

individual capacity knew, and should have known that her

misrepresentations to Conklin was the intent of Sunset and Saxon to

fraudulently conceal material facts from Plaintiff, by a prearranged

conspiratorial enterprise under the direction of Defendant Saxon

Mortgage Company, Inc. as to deliberately withhold material facts from

Plaintiff, that their deviate scheme was not to use any of their own

money or assets to fund Plaintiff's alleged loan, but further, as to

withhold or conceal their fraudulent intention.

## COUNT TWO

## CONVERSION AND FRAUD

30. Averments of this complaint from paragraphs 1 through 29 are reaffirmed as if stated herein and are incorporated by reference.

31. This fraudulent intent was to monetize Plaintiff's promissory note as create the only source of funding which is the same as debiting Saxon's assets and crediting Saxon's liability (Demand Deposit Account or DDA) which Plaintiff was neither informed nor privileged to those material facts that were based upon intentional fraudulent misrepresentation.[3]

32. SAXON MORTGAGE COMPANY, INC., the respondeat superior, apparent authority, maintenance and champerty directed, controlled, managed, ordered, supervised, instructed Deborah Black, manager of Sunset Mortgage Company to start foreclosure proceedings against Plaintiff without ever having a valid Complaint, much less a judgment ever filed on the Plaintiff's farm, and despite being so informed, nonetheless, executed the unlawful sale of Plaintiff's property anyways.

33. On or about September 7, 2005 Daniel Birsic, of the law firm of Grenen & Birsic, P.C. instituted foreclosure proceedings in the York

___

[3] The fraudulent

Defendant's Uniform Commercial Code Complaint

County Court of Common Pleas, docketed as 05-SU-2628-Y06.

34. Following Plaintiff's preliminary objections, particular due to the factual averments that were totally unsupported, by evidence, to evince a chain of assignments, on or about November 22, 2005, Defendant voluntarily withdrew their complaint.

35. On February 10, 2006, Grenen & Birsic, by and through Defendant Mary D. Grenen,

36. Daniel J. Birsic, P.C. is the managing partners and instructed Mary Grenen and Christine Anthou to ignore Conklin's fraud claims and due process rights and foreclosure and evict Conklin while concealing the fraud.

37. EMC Mortgage Company, Inc. 2780 Lake Vista Drive, Lewisville, Texas 75067. Has committed fraud upon Conklin when they claim that they are in possession of the notes when Plaintiff knows and has good reason to believe that the alleged notes have been securitized, monetized, collected on a insurance policy. EMC knew or should have known that the alleged notes were obtained through fraud and they were the respondeat superior relationship drivers behind the action of Grenen & Birsec P.C.

38. On April 18, 1997, Deborah Black, Manager of Sunset Mortgage Company in a respondeat superior relationship with defendant Saxon

necessary money for purchasing the farm located at 100 Spangler

Road, Lewisberry, Pa. 17339

42. Defendants Sunset, Deborah Black, Jeannette Cox under orders from

Saxon Mortgage Company intentionally, deliberately

misrepresentations that were fraudulent; intended to induce detrimental

reliance and cause great financial damage to the Plaintiff through an

conspiratorial enterprise with the named Defendants, Saxon Mortgage

Company and defendants yet not named Defendants in this case.

43. Defendant Black and Cox under a respondeat superior relationship with

Saxon Mortgage Company and Texas Commerce Bank, N.A. told

Plaintiff that Saxon Mortgage Company was going to lend Plaintiff

money so that Plaintiff could purchase the farm located at 100 Spangler

Road, Lewisberry, Pennsylvania 17339 (hereinafter referred to as

farm).


## COUNT 3 – BRINGING AN UNLAWFUL FORECLOSURE

44. Averments of this complaint from paragraphs 1 through 43 are

reaffirmed as if stated herein and are incorporated by reference.

45. It is Plaintiff's understanding based upon newly Federal Rules 60(b) 2,

newly discovered information which by due diligence could not have

been discovered in time to move for a new trial under Rule 59(b), 3,

fraud and/or misrepresentation, or other misconduct of the adverse parties, 4, the judgment is void, 5, (Possibly 5) and 6, any other reason justifying relief from the operation of the judgment which have supplied verified affidavits attesting has been verified by Robert Timmerman, a former Vice-President of First National Bank, having a Master's Degree from the University of Virginia with 29 years of banking experience and Gary Zajac, having passed his Certified Public Accountant exams and with over 30 years of auditing, accounting, income tax experience and an executive Controller of two world-wide conglomerates.

46. Michael Paoletta, Bachelor of Science Degree from Youngstown State University majoring in Management with minors in accounting and economics, authored two audio books on tapes and a three hundred fifty page book entitled, "Money and Banking".

47. The Plaintiff Conklin executed certain documents (promissory note and mortgage note) on/or about May 15, 1997 relating to a purported mortgage transaction with Sunset Mortgage (hereinafter Sunset, and/or EMC and every Defendant(s) under EMC listed as parties) York, Pa. by entering into cognovit creditor-debtor relationship through deception, deceitfulness, misrepresentation, and concealment by executing and negotiating a Mortgage Contract, which later became obvious that

hidden elements through non-disclosure contained several cognovit clauses, that are procedural and substantively unconscionable[4] rendering the cognovit clauses void under unconstitutional issues concerning the relative property located at 100 Spangler Road, Lewisberry, Pa. 17339.

48. Defendants failed to disclose and/or deliberately and intentionally concealed from Conklin that the Defendants knew or should have known that the Bank intended to utilize the fraudulently executed negotiable instrument(s), as the only value funding the loan,[5] using generally accepted accounting procedures to create funds for the "loan" by depositing Plaintiff's negotiable instrument(s) into an Bank's assets account and crediting a bank's liability and/or Bank's Demand Deposit Account thus increasing equally the assets and liabilities of Bank.

49. On information and belief, Defendants followed the aforementioned procedure with regard to the Note and Mortgage Note based upon the fraudulently created signatures of Stephen G. Conklin.

---

[4] As Official Comment 1 to § 2-302 of the Uniform Commercial Code suggests, "[t]he basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract." *Cheshire Mortgage Service, Inc. v. Montes, 1992* (emphasis added)

Deutsche Bank v. Peabody, 866 N.Y.S.2d 91 (2008). EquiFirst, when making the loan, violated Regulation Z of the Federal Truth in Lending Act 15 USC §1601 and the Fair Debt Collections Practices Act 15 USC §1692; "intentionally created fraud in the factum" and withheld from plaintiff... "vital information concerning said debt and all of the matrix

fraudulently forged documents by Sunset Mortgage, Defendant EMC is trying to evict Plaintiff Conklin from his Farm when Defendant EMC and all of the named and yet unnamed Defendants has already collected at least double amount of the alleged loan ( possibly even more through the monetization of both fraudulent negotiable instruments and through their trust creation through securitization.  Based upon PA. Rules of Procedure §2001 the Defendants must produce their accounting ledgers for a certified accounting forensic examination.

## COUNT 4 – VIOLATION OF UNIFORM COMMERCIAL CODE

53. Averments of this complaint from paragraphs 1 through 52 are reaffirmed as if stated herein and are incorporated by reference.

54. The Promissory Note and/or Negotiable Instrument and Mortgage Note were proffered as two separate contracts[7] and upon the Plaintiff's fraudulent signature became an immediate negotiable instrument available to the Bank for trading and/or selling in the stream of commerce, thereby enabling the Bank to double its money received in the form of the promissory note(s), for which the Bank gave no *new*

---

of the contractual terms and whether they are overly harsh or one-sided.

[7] "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." ... This duty has been recognized in the majority of American jurisdictions, the Restatement, and the Uniform Commercial Code....' ... [] The covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another. Such power must be exercised in good faith."

money or value within the meaning and terms of the uniform commercial code.

55. The Defendants deliberately and intentionally concealed the true nature of the transactions from the Plaintiff with the intention of defrauding Plaintiff out of further monies while fully knowing that Plaintiff were relying upon the Bank and Bank personnel's standing in a fiduciary relationship with Plaintiff to make full disclosure. Such concealment and nondisclosure by Sunset and EMC vitiated Bank's rights under the contracts, notes and security agreements entered into between the parties, leaving Plaintiff exposed to actually pay the Bank at least four times over and through securitization possibly another ten and even up to 50 additional times.

56. Plaintiff demands a full accounting of all account entries concerning the signed promissory note(s) in question that Sunset and EMC put in the stream of commerce or otherwise posted for value on the books of Sunset and EMC.

57. Plaintiff further demand a full accounting (accounting ledgers) of all funds and profits made by Sunset and EMC including and not limited to monetization, securitization and of trust indenture agreements made on behalf of Plaintiff without Plaintiff's approval and awareness.

Sunset and EMC has committed fraud in the factum, conversion[8],

fraudulently created and negotiated two financial instruments,

nondisclosure thus violating the Truth in Lending violations, and have

intentionally concealed that the Defendants had no intentional of using

actual value from the either Defendants (Sunset and EMC) and has

committed a violation including and not limited to Title 18 U.S.C.

§1956(a)(1)(A)(i)(ii)(B)(i) and (ii),  Laundering of monetary

instruments.

58. Defendants Sunset and EMC has not proven that they are entitled to

collect upon the alleged security agreement pursuant to the terms and

provisions of 13 Pa. C.S. §9203(b)(1) (value has not been given) and

§9203(3)(i) (Plaintiff has never authenticated any security agreement or

even acknowledged any legal indebtedness to any of the Defendants in

this case) and Defendants burden of proof have not been met under the

totality of the circumstances and evidence before this Court to their

rights of enforceability.

59. Defendants Sunset and EMC could not be the holder in due course of

---

[8] In fact, Defendants committed "Direct Conversion," which is defined as:

"The act of actually appropriating the property of another to his own beneficial use... or that of a third person. ... or altering its nature, or wrongfully assuming title in himself." Id. at 300.

    This act of conversion is further clarified: "It is an essentially tortuous act, an unlawful act, an act which cannot be justified or excused in law." BALLENTINE'S LAW DICTIONARY, 3rd ed., at 269, quoting 18 AmJur2nd, Conversion, §1.

the promissory and/or negotiable instrument(s) within the provisions of
Pa. Uniform Commercial Code 13 Pa. C.S. §3302(a)(1) because the
original signature was computer oriented and as Sunset even admits
that the documents were actually monetized two weeks before the first
appearance of Plaintiff Conklin.

60. Defendants Sunset and EMC knew, should have known and
participated with complete knowledge and approval of creating
fraudulent documents thus violating Title 18 U.S.C. §1956
a)(1)(A)(i)(ii)(B)(i) and (ii), (money laundering) and actually accepted
the fraudulently created documents that they accepted the referenced
documents and violated Title 13 Pa. C.S. §3302(1) knowingly that the
documents were fraudulent for it was obvious that the documents in
question has been altered or forged and should have questioned the
authenticity of the computer executed Note(s).

61. Defendants Sunset acting in a respondeat superior relationship with
EMC not only knew, should have known that the documents were
fraudulently created and they were involved in the actual monetization
of the fraud documents two weeks prior to even meeting Plaintiff
Conklin and actually ordered, managed, directed and controlled the
actions of Sunset, in and participated with complete knowledge and
approval that EMC would be accepting fraudulent documents thus

violating in a conspiratorial relationship Title 18 U.S.C. §1956

(a)(1)(A)(i)(ii)(B)(i) and (ii), (money laundering) and actually accepted

and monetized the fraudulently created documents and violated Title 13

Pa. C.S. §3302(1) knowingly that the documents were fraudulent for it

was obvious that the documents in question has been altered or forged

and should have been questioned by EMC the authenticity of the

computer executed Note(s).

62. Defendants Sunset and EMC could not remotely claim that they took

the notes in question pursuant to Title 13 Pa.C.S. §3302(2)(i),(ii) for

value or in good faith because EMC and Sunset were acting in a

conspiratorial unjust enrichment scheme at the legal and financial

detriment of Plaintiff Conklin.

63. Defendants Sunset and EMC ignored Plaintiff's claim and/or defense

and continued to violate Plaintiff's rights and actually sold the property

knowingly that the initial notes in questioned were in fact fraudulent

and violated Pa. C.S. §3302(1).

64. Defendants Sunset and EMC violated Pa. C.S. §3302(d) by foreclosing

illegality on the Plaintiff's farm without substantiating their share of

the security interest in question, and under §3302(d) the Defendants are

only entitled and/or assert rights as the holder in due course for the

instrument(s) only to the exact amount paid (PA. C.S. §3303(a)(1)

and/or rendered under the instrument equal to the value of the performance divided by the value of the promised performance and/or up to the actual amount (money) risked by the Defendant(s).

65. Defendants, Sunset, EMC and G&B, under a Responeat Superior relationship were ordered to proceed with these illegal foreclosure actions in spite of their own knowledge that the loan in question was not funded with any valuable consideration under Pa. C.S. §3303(a)(1).

66. Defendants, Sunset, EMC and G&B has violated PA. C.S. §3308(a) for ignoring Sunset's own admission that Sunset actually forged Plaintiff's name and actually monetized by depositing and credited certain accounting ledgers without Conklin's approval and/or consent. It is the legal duty of all the Defendants to substantiate the authenticity of the documents and if they were examining the pleadings of Conklin it would become very evident that Plaintiff Conklin raised the authenticating issue numerous times.

67. Defendants, Sunset, EMC and G&B according to Title 13 Pa. C.S. 3308(b) clearly states that even if Plaintiff Conklin admitted to his signature on the notes, which Conklin categorically denied numerous times was not his signature does not relieve the burden of proving that

the foreclosing[9] party is entitled to payment pursuant to PA. Title 13

PA. C.S. §§ 3301, 3308(b) and 3401 and must produce and surrender

the promissory and the mortgage note to the Plaintiff.

68. Defendants, Sunset, EMC and G&B according to Title 13 Pa. C.S.

§3309(b) the Defendants have intentionally, deliberately with malicious

intent has not complied with §3309(b) so therefore this Court has

violated this same section by granting summary judgment, "The Court

may not enter judgment in favor of the person seeking enforcement[10]

unless it finds that the person required to pay the instrument is

adequately protected against loss that might occur by reason of a claim

by another person to enforce the instrument. Adequate protection may

be provided by any reasonable means.[11]

69. Defendants EMC and G&B has violated PA. C.S. Title 13 §3311,

---

[9] A loan servicer has no standing to foreclose absent proof of possession of the Note or authority to enforce the Note. There is no evidence that Defendant EMC has either. If Defendant EMC has authority as servicer to foreclose, they must be able to produce and authenticate that Note and prove they had standing to foreclose.

[10] There are two essential provisions applicable to the enforcement of a negotiable instrument, for a person to qualify as a genuine and/or actual "holder" of the note: (a) a person must be in possession of the instrument, and (b) the instrument must be payable to that person.

[11] Pursuant to Federal & PA. U.C.C. Section 3-603, payment "MUST" be made to the "HOLDER IN DUE COURSE" or discharge of the note does not occur placing the debtor in jeopardy as to being required to pay the note twice, once to the entity who bills and once to the actual holder of the note. The official UCC commentary to Section 3-309 states that: "Judgment to enforce the instrument cannot be given unless the court finds that the [plaintiffs] will be adequately protected against a claim to the instrument by a holder that may appear at some later time."

(Accord and Satisfaction)[12] by deception, deceitfulness, despicable and violating their fiduciary relationship under Title 13 Pa. C.S. §3307 and pursuant to §3311(a) and (b) "requirements-If a person against whom a claim is asserted proves that: (1).That person in good faith tendered an instrument to the claimant as full satisfaction of the claim; (2) The claimant obtained payment of the instrument.

70. Defendants EMC and G & B knew and actually committed fraud upon this court that the Defendants intentionally, deliberately and maliciously distorted the truth that bordered on criminal concealment and ignored the fact that payment was given and/or tendered by Norley on or about—December 2, 2008  in the amount of $10,000,000 (one million) in compliance with and not limited to Title 13 §3311.

71. Defendants, EMC and G & B stated and/or referred in Court records that the payment of Norley was based upon a fraudulent document and stated under oath that the note was not negotiation as payment on the Plaintiff's farm.

72. Defendants, EMC and G & G illegally in a conspiratorial nature to illegally prosper by monetizing the claimed fraudulent note issued by

---

[12] Pennsylvania has adopted the revision of Article 3, Negotiable Instruments and follows the text of this article. §3-603 states in relevant part: "A person paying or otherwise satisfying an instrument must obtain possession of it in order to protect himself or herself from the possibility of a subsequent transfer to a holder in due course who will be able to enforce the instrument according to its terms....UCC §3-603 protects a party from double liability after having paid the holder the full amount of the paper." ANDERSON ON THE UNIFORM COMMERCIAL CODE (3rd ed., revised 1998) at 331-32.

Norley by depositing it into a Bank's asset account by debiting the

Bank's asset account and credit a Bank's liability and/or demand

deposit account by the face amount of the Norley Note in order for

their unjust enrichment at the great expense and legal and financial

detriment of Plaintiff Conklin.

73. Plaintiff hereby avers based upon his understanding, believes,

information and knowledge that Defendants EMC and G & B

intentionally, deliberately with criminal intent, maliciously concealed

that the Defendants EMC and G & B contrary to court records actually

monetized the Note issued by Michael Norley and was traced to several

wall street continue on with cusip (Community Uniform

Securitization[13] Identity Procedures) numbers.

74. Defendants EMC and G&B having proceeded with these legal actions

in spite of their own knowledge that the loan in question was not

funded with valuable consideration other than that belonging to the

Plaintiff (note(s) constitutes unauthorized alterations of the instrument

contrary to §§3407 of Pa. Uniform Commercial Code on Alterations.

75. Defendants EMC and Sunset by accepting a fraudulently created

---

[13] The following definition from the DICTIONARY OF FINANCIAL TERMS, Copyright © 2008, explains securitization as: Securitization is the process of pooling various types of debt -- mortgages, car loans, or credit card debt, for example -- and packaging that debt as bonds, pass-through securities, or collateralized mortgage obligations (CMOs), which are sold to investors.

documents, monetized and securitized said notes and placed the

referenced notes into the field of commerce without the approval

and/or consent of Plaintiff Conklin and have intentionally, deliberately,

participated in illegal activities that borders on criminal conspiracy by

unauthorized alterations of the instrument contrary to §§3407 of Pa.

Uniform Commercial Code on Alterations.

76. Defendant's EMC and G & B has taken and illegally monetized the

fraudulent[14] negotiable instrument notes with out Plaintiff's

confirmation, knowledge and awareness on or about Date, month, day

for a purported loan — which loan was represented by Bank to be a

single loan transaction with a source of funding independent of the

documents which Plaintiff was required to sign; it is affirmatively

averred on information and belief that this representation by Sunset and

EMC was false and was a fraud on the Plaintiff in the following

particulars to wit and it is affirmatively averred on information and

belief that:

77. Sunset and EMC deposited the Note to a demand deposit account,

which increased the assets and the liabilities of Bank by $264,000. This

---

[14] But the transferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud, or illegality affecting the instrument." ANDERSON ON THE UNIFORM COMMERCIAL CODE, supra, at 213. (emphasis added)

can be verified through discovery by an audit of the accounting ledgers

of the Sunset and EMC by an expert witness(s) Certified Public

Accountant and other experts.  Sunset and EMC's records through

examination will show that Sunset and EMC under law must follow

Generally Accepted Accounting Procedures ("GAAP") and this

forensic examination will substantiate the fraud and/or

misrepresentation committed against the Plaintiff Conklin.

78. Sunset and EMC committed fraud on the Plaintiff by failing to disclose

to him that Sunset and EMC would monetize the note(s) and strictly

funded the loan with the use of the Plaintiff signed note.  Plaintiff's

note actually "funded" the loan. Under the use of GAAP, Sunset and

EMC did not lend Plaintiff anything.  Plaintiff funded his own loan

with the value of his note. The Bank did not risk anything in this

transaction.

79. Sunset and EMC further committed fraud on Plaintiff by failing to

disclose to Plaintiff that the Negotiable Instrument(s) that Plaintiff was

being required to sign were negotiable instrument(s) which the Bank

could then put into the stream of commerce and sell or trade for value,

thereby increasing the assets of the Bank, before any payments were

made by the Plaintiff.

80. Sunset and EMC further committed fraud on the Plaintiff by failing to

disclose from the inception of their dealings with Plaintiff that Sunset

and EMC fully intended to double, triple and quadruple Sunset and

EMC's profits on the transaction by requiring Plaintiff to pay principle

and interest for the use of the Plaintiff own valuable note.

81. Sunset and EMC having proceeded with the transaction in spite of its

own knowledge that it was not funding the loan in question with a

valuable consideration other than that belonging to the Plaintiff,

constitutes an unauthorized alteration of the instrument of the

Negotiable Instruments taken from the Plaintiff contrary to section §§

3407 of the Pennsylvania Uniform Commercial Code on Alteration.

82. Sunset and EMC having proceeded with the transaction in spite of its

own knowledge that it ordered Sunset to artificially create Plaintiff's

signature on a promissory and a mortgage note, monetized and

securitized aforementioned negotiable notes thus creating up to fifty

times the value of the artificially created notes without the knowledge

and consent of Plaintiff Conklin and two weeks later under a

respondeat superior relationship EMC instructed Sunset to once again

create two additional notes and this time Plaintiff Conklin actually

executed two additional notes that were once again monetized and/or

securitized and placed into the stream of commerce at the great expense

of Plaintiff Conklin and Sunset and EMC benefited immensely possibly

and/or the holder of the promissory note and/or negotiable instrument(s) within the provisions of Pennsylvania's Uniform Commercial Code 13 Pa.C.S. §§ 3302.

86. The Sunset and EMC did not make full disclosure of the manner in which the amount of money advanced or deposited was being funded by the Debtors' own negotiable instruments; it is expressly denied that Sunset and EMC complied with all provisions of the uniform commercial code governing the law of contracts.

87. The facts of this case, as plead herein render the Promissory Note and/or negotiable instruments are unenforceable including and not limited to Section (a) of 13 Pa. C.S. §9203;

88. It is further affirmatively averred that all Affirmative Defenses and all pleadings are interposed in this Complaint are repeated herein verbatim and asserted to this averment.

89. Plaintiff admits that the contract and agreement of the parties speak for themselves and it is affirmatively averred that the fraud in the inception, conversion[16], misrepresentation, monetization, securitization,

---

[16] As the Security Instruments were the personal property of the Plaintiffs, Defendant's conduct met the legal elements of the charge of Conversion. Conversion is defined as: "An unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of the owner's rights. Any unauthorized act which deprives and owner of his property permanently or for an indefinite time. Unauthorized and wrongful exercise of dominion and control over another's personal property, to exclusion or inconsistent with the rights of owner." BLACK'S LAW DICTIONARY, 5th ed., at 300.

the hidden cognovit[17] clauses vitiated any rights of EMC and all other Defendants through illegally creating two fraudulently created Negotiable instrument and/or promissory note and the creation of two additional notes making the contract between these parties void and should e set aside and held for naught and full damages, and cost to make the Plaintiff whole are demanded.

90. Sunset and EMC and any of its claims made under a default is subject to the terms and provisions of the Uniform Commercial Code at Title 13 Pa. C. S., including but not limited to §§ 3304 (c) and all sections cited in this Complaint; any claim by Defendant is set off by the damages and claims accruing to the Plaintiff by virtue of the breaches by Sunset and EMC including its fraud in the inception of the dealings between the parties, nondisclosure, no consideration, breach of agreement and fraud in the factum.

91. EMC is individually and corporately liable under the facts of this case.

---

[17] Justice Blackmum stated. "...[i]t was held that (1) a cognovit clause was not, per se, violative of the Fourteenth Amendment due process requirements as to prejudgment notice and hearing, and (2) under the facts in the instant case. (Overmyer) due process was not violated by the entry of the confessed judgment, since the record established that the debtor had knowingly and voluntarily waived its rights to notice and hearing, with full awareness of the legal consequences, by executing the cognovit note, which was supported by consideration from the creditor, and which had resulted from negotiations between the parties of equal bargaining power,..." Unlike in Overmyer. Plaintiff never knowingly waived and voluntarily waived any rights because due to misrepresentation and concealment, they weren't full awareness of terms and conditions, and there wasn't equal bargaining power. D. H. Overmyer Co. Inc., of Ohio Et al., v. Frick Co., 405 U.S. 174 (1972). "A maker of a confession of judgment voluntarily, intelligently, and knowingly waives due-process rights it otherwise possesses to prejudgment notice and hearing, and does so with full awareness of the legal consequences, when: (1) the cognovit does not involve unequal bargaining power or overreaching; (2) the agreement is not a contract of adhesion; (3) the cognovit provision is obtained for adequate consideration; (4) the cognovit is a product of negotiations carried on by parties with the advice of competent counsel; and (5) the maker, despite cognovit, is not defenseless under state law."

92. Averments of this complaint from paragraphs 1 through 91 are reaffirmed as if stated herein and are incorporated by reference.

93. Plaintiff by demand, reserves the right to amend this Complaint, in the interest of justice and as the discovery process proceeds and new information becomes available to Plaintiff.

94. Plaintiff (hereinafter referred to as Conklin, Plaintiff states to this Court the following: THE SUNSET ADMITTED THEY FORGED CONKLIN'S NAME OF THE PROMISSORY AND MORTGAGE NOTE AND THAT DID NOT SUBSTANTIATE BEING THE HOLDER IN DUE COURSE.

95. Plaintiff, supported by his three expert witnesses state with a high degree of certainty state that Defendants would have securitized the fraudulent Mortgage Note by illegally monetizing and converting that particular mortgage note into a stock certificate through the Depository Trust Corporation where it became an Mortgage Backed Securities (MBS) and sold to investors through the depositing of this MBS for money and thereby losing any and all claims to the MBS, where the trust received 90 to 95% of the value.

96. Saxon Mortgage Company, Inc. was the depositor who deposited the Mortgage Note into the trust and was given credit enhancements in the

form of entries into Saxon's assets and net worth account.

97. Through the Bank and its representatives, represented to Plaintiff (hereinafter known as PLAINTIFF) that the Bank would commit to pay to PLAINTIFF a "loan" of money, which sum of money it was understood by PLAINTIFF was to be an advance of new money funded by Bank.

98. BANK failed to disclose and/or deliberately and intentionally concealed from Plaintiff that the BANK knew or should have known that the Bank intended to utilize the negotiable instrument signed by Plaintiff to use the Plaintiff's instrument (negotiable instrument) as the only value funding the loan, using generally accepted accounting procedures to create funds for the "loan" by depositing the negotiable instrument into the Bank's asset account by debiting Bank's assets and crediting a bank's liability or  Demand Deposit Account thus increasing the assets and liabilities of Bank for the amount of the sign . (Accordingly through expert witnesses.)[18]

## CONVERSION ON THE PROMISSORY NOTE

---

Plaintiff has three expert witnesses who will testify in court concerning the information in this Complaint. Mr. Timmerman is a former 30 year former Vice-President of a major east coast bank, having a Masters' Degree from the University of Virginia in banking and has been involved literally thousand bank transactions and willing to testify under oath to the correctness of this Complaint. The second expert witness is a thirty year controller of a major world producing steel producing industry and passing his CPA Board and having an accounting degree including auditing. The third expert is an author having written three books on the Subject of Money and Banking and has research the subject for over 23 years, having read of 500 books pro and con of the subject, and a twenty year lecturer and former Congressional Candidate and has been on hundreds of radio and television shows.

**102.**     The Promissory Note and/or Negotiable Instrument was proffered

as a separate contract and upon Conklin's[19] fraudulently created

signature became an immediate negotiable instrument available to the

Bank for trading and/or selling in the stream of commerce, thereby

enabling the Bank to double its money received in the form of the

promissory note(s), for which the Bank gave no new money or value

within the meaning and terms of the uniform commercial code.

**103.**     The Bank deliberately and intentionally concealed the true nature

of the transactions from the Plaintiff with the intention of defrauding

Plaintiff out of further monies while fully allowing Plaintiff to

justifiably relay upon the misrepresentations of Sunset and Saxon

because Plaintiff, the least sophisticated susceptible consumer and

trusted his ill-founded  fiduciary relationship and Sunset took

advantage of this trust knowingly that Conklin does not understand

money and banking at all and the Defendants vitiated Bank's rights

under the contracts, notes and security agreements entered into between

the parties, leaving Plaintiff exposed to actually pay the Bank twice,

once with the value of the Plaintiff's Negotiable Instrument and the

second by making payments and interest for a purported loan that was

an even exchange. The Bank will be required to show the transactions

---

[19] Plaintiff has never negotiated documents to become indebted to EMC.

Defendant's Uniform Commercial Code Complaint

or complete money trail covering four weeks prior and four weeks after the date of May 15, 1997.

**104.**    Plaintiff demands a full accounting of all the ledger accounts and all account entries concerning the signed promissory note(s) in question that Bank put in the stream of commerce or otherwise posted for value on the books of the Bank.

**105.**    Plaintiff further demand a full accounting of all funds and profits made by Bank, in the form of payment method (cancelled checks, money transfers, wire transfers and/or any other method of payments) to third parties arising out of or utilizing book-keeping entries posted illegally or fraudulently to my demand deposit account and/or any ledger account bearing my name. If bank deposited Plaintiff's Note, without Plaintiff's consent than the bank has committed conversion, fraud in the inducement, non-disclosure, truth in lending violations, no consideration plus other state and federal violations. (parol evidence rule applies)

**106.**    Defendants having proceeded with the illegal foreclosure actions in spite of their own knowledge that the loan in question was not funded with Banks valuable consideration other than that belonging to the Plaintiff constitutes unauthorized alterations of the instrument contrary to §§3407 of Pa. C.S. Title 13, Commonwealth of

Pennsylvania Uniform Commercial Code on Alterations.

**107.** Plaintiff admits that he executed a promissory note and/or negotiable instrument on or about May 15, 1997 for a purported loan — which loan was represented by Bank to be a single loan transaction with a source of funding independent of the documents which Plaintiff was required to sign; it is affirmatively averred on information and belief that this representation by Bank and Defendant was false and was a fraud on the Plaintiff in the following particulars: to wit: it is affirmatively averred on information and belief that:

**108.** The Bank deposited the Note to a demand deposit account, which increased the assets and the liabilities of Bank by $235,600.00. This can be verified through discovery[20] by an audit of the accounting ledgers of the Bank by an expert witness(s) Certified Public Accountant and other experts. The Bank's records through examination will show that Bank follows Generally Accepted Accounting Procedures ("GAAP") This was an even exchange of value not a loan.

**109.** The Bank committed fraud on the Plaintiff by failing to disclose to him that Bank was monetizing the note and strictly funded the loan

---

[20] Conklin has never been permitted to discover anyone from the inception of this mortgage and has never had a hearing or trial on any matters in this case before any court. Summary Judgment was issued in 2009 by Judge Cook. Judge Buller stated in Company of Carpenters v. Haywood, "Whether there be any evidence, is a question for the judge. Whether there be sufficient evidence, is for the jury." The York County Judges all denied Plaintiff his rights under the Seventh Amendment to a Trial by Jury but actually ignored numerous material facts in dispute including and

with the use of the Plaintiff signed note. Plaintiff's note actually "funded" the loan. Under the use of GAAP, Bank did not lend Plaintiff anything. Plaintiff funded his own loan with the value of his note. The Bank did not risk anything in this transaction.

110.    The Bank further committed fraud on Plaintiff by failing to disclose to Plaintiff that the Negotiable Instrument(s) that Plaintiff was being required to sign were negotiable instrument(s) which the Bank could then put into the stream of commerce and sell or trade for value, thereby increasing the assets of the Bank, before any payments were made by the Plaintiff.

111.    The Bank further committed fraud on the Plaintiff by failing to disclose from the inception of their dealings with Plaintiff that the Bank fully intended to double, triple and quadruple the Bank's profits on the transaction by requiring Plaintiff to pay interest for the use of the Plaintiff own monetization of his own valuable note.

112.    The Bank having proceeded with the transaction in spite of its own knowledge that it was not funding the loan in question with a valuable consideration other than that belonging to the Plaintiff, constitutes an unauthorized alteration of the instrument of the Negotiable Instruments taken from the Plaintiff contrary to section §§

3407 of the Pennsylvania Uniform Commercial Code on Alteration.

113.     Bank altered, and breached their own contract by adding their

undisclosed purpose to furnish no actual consideration (money) for the

loan(s) from their funding sources other than the Plaintiff's Note.

114.     The terms and provisions of 13 Pa. C.S.. §9203 have not been met

under the totality of the circumstances of the dealings by the Bank with

the Plaintiff; the Bank could not be a holder in due course of the

promissory note and/or negotiable instrument(s) within the provisions

of Pennsylvania's Uniform Commercial Code 13 Pa.C.S. §§ 3302. The

bank did not make full disclosure of the manner in which the amount of

money advanced or deposited was being funded by the Debtors' own

negotiable instruments; it is expressly denied that Defendant Bank

complied with all provisions of the uniform commercial code

governing the law of contracts and are not enforceable and the Bank is

left to its strictest proofs in the premises hereof.

115.  The facts of this case, as plead herein render the Promissory Note

and/or negotiable instruments are unenforceable under Section (a) of 13

Pa. C.S. §9203; and

116.  It is Affirmatively averred that all paragraphs interposed in this

Complaint are repeated herein verbatim and asserted to this averment.

117.  Plaintiff admits placing his signature on a negotiable instrument in

**121.** The Promissory Note and/or Negotiable Instrument was proffered as a separate contract and upon Plaintiff Conklin's signature became an immediate negotiable instrument(s) available to Sunset and EMC for trading, creating a trust, monetizing and/or securitization by selling the two fraudulent documents created by Sunset Mortgage and the two created documents fraudulently created in front of Plaintiff Conklin and placed in the stream of commerce, thereby enabling the Bank to double its money received in the form of the promissory note(s), for which the Bank gave no *new* money or value within the meaning and terms of the uniform commercial code.

**122.** The Defendants deliberately and intentionally concealed the true nature of the transactions from the Plaintiff with the intention of defrauding Plaintiff out of further monies while fully knowing that Plaintiff were relying upon the Bank and Bank personnel's standing in a fiduciary[21] relationship with Plaintiff to make full disclosure.

---

[21] In general, the covenant imposes a duty upon a party to a contract not to deprive the other party of the benefits of the contract. *(Floystrup v. City of Berkeley Rent Stabilization Bd. (1990) 219 Cal. App.3d 1309, 1318 [268 Cal. Rptr. 898].)* The covenant "'... not only imposes upon each contracting party the duty to refrain from doing anything which would render performance of the contract impossible by any act of his own, but also the duty to do everything that the contract presupposes that he will do to accomplish its purpose.'" (Ibid.)"

Upon analysis of the particular circumstances at issue, a fiduciary relationship between a borrower and lender has been found to exist where there is a repose of trust by the customer along with an acceptance or invitation of such trust on the part of the lending institution. *Pigg v. Robertson, 549 S.W.2d 597 (Mo.App.1977); Klein v. First Edina National Bank, 293 Minn. 418, 196 N.W.2d 619 (1972); and M. L. Stewart & Co. v. Marcus, 124 Misc. 86, 207 N.Y.S. 685 (1924)."

**123.** Plaintiff demands a full accounting a the board of all account entries concerning the signed promissory note(s) in question that Bank put in the stream of commerce or otherwise posted for value on the books of the Bank.

**124.** Plaintiff, by demand, reserves the right to amend this Complaint, in the interest of justice and as the discovery process proceeds and new information becomes available to Plaintiff.

**125.** Plaintiff (hereinafter referred to as Conklin, Plaintiff states to this Court the following:

**126.** Plaintiff, supported by his three expert witnesses state with a high degree of certainty state that Defendants would have securitized the fraudulent Mortgage Note by illegally monetizing and converting that particular mortgage note into a stock certificate through the Depository Trust Corporation where it became an Mortgage Backed Securities

---

"banks present a constant invitation to intending borrowers, and thus subject themselves to whatever implication or obligation is to be drawn from that fact." *M. L. Stewart & Co. v. Marcus*. Also, because a fiduciary relationship may exist between a lending institution and prospective borrower, *Pigg v. Robertson, supra*

If a fiduciary relationship exists, the lender has a duty to refrain from involvement in transactions antagonistic to its customer. Pigg v. Robertson, supra; M. L. Stewart & Co. v. Marcus, supra

**134.** The above referenced paragraphs are hereby included herein as if they were specially stated verbatim.

**135.** Bank would have intentionally concealed from Plaintiff that the alleged loan, created through an accounting ledger had in fact already been paid in full for the loan, (properly referred as an even exchange) with a fraudulent conversion, the depositing of the Plaintiff's Note in the same fashion as the bank would deposit Plaintiff's pay check thus actually increasing Banks assets and liabilities without the consent of the Plaintiff thus breaching their agreement with Plaintiff.

**136.** The Mortgage note and/or Negotiable Instrument was proffered as a separate contract and upon Conklin's[23] fraudulently created signature became an immediate negotiable instrument available to the Bank for trading and/or selling in the stream of commerce, thereby enabling the Bank to double its money received in the form of the mortgage note(s), for which the Bank gave no new money or value within the meaning and terms of the uniform commercial code.

**137.** The Bank deliberately and intentionally concealed the true nature of the transactions from the Plaintiff with the intention of defrauding Plaintiff out of further monies while fully allowing Plaintiff to justifiably relay upon the misrepresentations of Sunset and Saxon

---

Plaintiff has never negotiated documents to become indebted to EMC.
Defendant's Uniform Commercial Code Complaint

without Plaintiff's consent than the bank has committed conversion, fraud in the inducement, non-disclosure, truth in lending violations, no consideration plus other state and federal violations. (parol evidence rule applies when based upon Fraud in the Inception)

140.  Defendants having proceeded with the illegal foreclosure actions in spite of their own knowledge that the loan in question was not funded with Banks valuable consideration other than that belonging to the Plaintiff constitutes unauthorized alterations of the instrument contrary to §§3407 of Pa. C.S. Title 13, Commonwealth of Pennsylvania Uniform Commercial Code on Alterations.

141.  Sunset Mortgage Co. admitted in a letter that SUNSET MORTGAGE CONPANY FORGED CONKLIN'S NAME ON A PROMISSORY AND MORTGAGE NOTE ON May 1, 1997, PROVING FRAUDULENT BEHAVIOR UNDER ORDERS FROM SAXON MORTGAGE COMPNAY. Deborah Black was tried for fraud and convicted by Judge Rambo and sentenced to one year in prison and fined $575, 000.

142.  Plaintiff admits that he executed a mortgage note and/or negotiable instrument on or about May 15, 1997 for a purported loan — which loan was represented by Bank to be a single loan transaction with a source of funding independent of the documents which Plaintiff was

required to sign; it is affirmatively averred on information and belief that this representation by Bank and Defendant was false and was a fraud on the Plaintiff in the following particulars: to wit: it is affirmatively averred on information and belief that:

**143.** The Bank deposited the Note to a demand deposit account, which increased the assets and the liabilities of Bank by $235,600.00.This can be verified through discovery[24] by an audit of the accounting ledgers of the Bank by an expert witness(s) Certified Public Accountant and other experts. The Bank's records through examination will show that Bank follows Generally Accepted Accounting Procedures ("GAAP") This was an even exchange of value not a loan.

**144.** The Bank committed fraud on the Plaintiff by failing to disclose to him that Bank was monetizing the note and strictly funded the loan with the use of the Plaintiff signed note.  Plaintiff's note actually "funded" the loan. Under the use of GAAP, Bank did not lend Plaintiff anything.  Plaintiff funded his own loan with the value of his note. The Bank did not risk anything in this transaction.

**145.** The Bank further committed fraud on Plaintiff by failing to disclose

---

[24] Conklin has never been permitted to discover anyone from the inception of this mortgage and has never had a hearing or trial on any matters in this case before any court. Summary Judgment was issued in 2009 by Judge Cook. Judge Buller stated in Company of Carpenters v. Haywood, "Whether there be any evidence, is a question for the judge. Whether there be sufficient evidence, is for the jury." The York County Judges all denied Plaintiff his rights under the Seventh Amendment to a Trial by Jury but actually ignored numerous material facts in dispute including and

to Plaintiff that the Negotiable Instrument(s) that Plaintiff was being required to sign were negotiable instrument(s) which the Bank could then put into the stream of commerce and sell or trade for value, thereby increasing the assets of the Bank, before any payments were made by the Plaintiff.

**146.** The Bank further committed fraud on the Plaintiff by failing to disclose from the inception of their dealings with Plaintiff that the Bank fully intended to double, triple and quadruple the Bank's profits on the transaction by requiring Plaintiff to pay interest for the use of the Plaintiff own monetization of his own valuable note.

**147.** The Bank having proceeded with the transaction in spite of its own knowledge that it was not funding the loan in question with a valuable consideration other than that belonging to the Plaintiff, constitutes an unauthorized alteration of the instrument of the Negotiable Instruments taken from the Plaintiff contrary to section §§ 3407 of the Pennsylvania Uniform Commercial Code on Alteration.

**148.** Bank altered, and breached their own contract by adding their undisclosed purpose to furnish no actual consideration (money) for the loan(s) from their funding sources other than the Plaintiff's Note.

**149.** The terms and provisions of 13 Pa. C.S.. §9203 have not been met

for themselves and it is affirmatively averred that the fraud in the inception by the Bank vitiated any rights of the Bank in the Negotiable instrument and/or mortgage note and the contract between these parties should be set aside and held for naught and full damages, and cost to make the Plaintiff whole are demanded.

**154.** Any claim by the Bank made under a default is subject to the terms and provisions of the Uniform Commercial Code at title 13 of Pa.C.S., including but not limited to §§ 3304 (c) and all sections cited in this Complaint; any claim by Defendant is set off by the damages and claims accruing to the Plaintiff by virtue of the breaches by the Bank including its fraud in the inception of the dealings between the parties, non-disclosure, no consideration, breach of agreement and fraud in the factum.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demand judgment against Bank for all costs and damages occasioned by Defendant's breaches of contract and the laws of Pennsylvania. Plaintiff has suffered, and will continue to suffer, substantial injury as a result of Defendant's violations of laws of this Commonwealth, specifically but not limited to Title 13, PA C.S.. Absent injunctive relief by this Court, the Defendants are likely to continue to injure consumers and harm the public interest. This Court is empowered to grant injunctive and other ancillary relief, including consumer redress, disgorgement and restitution, to prevent and remedy any violations of any provisions of law.

a. Enter judgment against the Defendant and in favor of Defendant/ Plaintiff.

b. Permanently enjoin and restrain Defendant from violating Pa Rules of Court, FDCPA, FCRA and Title 13 of PA C.S..

c. Award such ancillary equitable relief as the Court deems necessary to prevent unjust enrichment and to redress Plaintiff's injury resulting from Defendant's actions and fraud upon this Court.

d. Force through discovery Defendant accounting ledgers to disprove the alleged allegations of Defendant's initial Complaint.

e. Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

WHEREFORE, Plaintiff demand judgment against Bank for all costs and damages occasioned by Defendant breaches of contract and the laws of Pennsylvania.

## RELIEF REQUESTED

For his relief, Plaintiff states and demands:

1. Plaintiff, untrained in the law, reserves his right to amend this Complaint in the interest of justice, as more information is made available to him.

2. Trial by jury on all issues triable by jury.

3. A complete investigation into GRENEN AND BIRSEC P.C. AND SAXON MORTGAGE COMPANY AND EMC MORTGAGE COMPANY FOR FRUAUDLENT ASSIGNMENTS AND FALSE STANDING ISSUES subject to penalties of 18 Pa. C.S. Section 4904, relating to unsworn

falsifications to authorities.

4.     A Declaratory Order, from this Honorable court, that Plaintiff can introduce predicate acts in the future including and not limited the **Federal Racketeer Influenced Corrupt Organizations Act.** Including Mail, Wire Fraud and other acts including and not limited to violations of any section of Title 15, U.S.C. that is discovered after discovery.

5.     The actual return of my negotiable instrument(s) and zeroing out of both accounts for these purported and disputed loans.

6.     Punitive damages and other damages to be determined by the jury.

7.     A complete investigation into the activities of Grenan & Bersic because of possible violations for lack of knowledge in this case and/or violations of Pennsylvania Law, Federal Law and the Pennsylvania's Canon of Legal ethics.

8.     Such other relief as this Honorable court deems just, proper and equitable.

Respectfully submitted,

STEPHEN G. CONKLIN